UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

KENNETH COLVIN,

        Plaintiff,                     Case No. 1:15-cv-70

v.                                           Honorable Janet T. Neff

DANIEL H. HEYNS et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss on grounds of immunity or for failure to state a claim Plaintiff's claims against Defendantd Heyns, Burt, Jackson and Pallas. The Court also will dismiss Plaintiff's conditions-of-confinement, due process, and access-to-the-courts claims. The Court will serve the remaining claims against Defendants Morefield, McDonald, Winger and West.

**Factual Allegations**

Plaintiff Kenneth Colvin presently is incarcerated with the Michigan Department of Corrections (MDOC and housed at the Kinross Correctional Facility (KCF). The actions about which he complains occurred while he was housed at KCF and at the Muskegon Correctional Facility (MCF). Plaintiff sues MDOC Director Daniel H. Heyns and Administrative Law Judge Donald J. Pallas, as well as the following MCF officials: Warden S. L. Burt; Deputy Warden (unknown) Jackson; Correctional Officers (unknown) Morefield and (unknown) McDonald; Resident Unit Manager Jeanine Winger; and Prison Counselor Bryan West.

According to the complaint, on July 18, 2014 at about 10:40 a.m., Plaintiff left the Unit 3 game room and walked to the unit officer's desk. He asked Defendant Morefield to contact Ms. Crawford, who is not a defendant in this action. Defendant Morefield rubbed his head and angrily informed Plaintiff that he would contact Ms. Crawford and ask her to call Plaintiff out to see her. Defendants Winger and West also were standing at the desk. Plaintiff began to speak with Defendant Winger, advising her that bleach-water solution was not being distributed every Saturday, as Winger had informed Plaintiff would happen on July 2, 2014. Plaintiff specifically requested that she directly instruct Defendant Morefield and Correctional Officer (unknown) McDonald to distribute the bleach water the following day, Saturday, July 19, 2014. Winger explained to Plaintiff that the bleach-water solution is first used to clean the unit's shower and bathrooms. After those are clean, the water is distributed for unit cleaning. Defendant Bryan West overheard the conversation and told Plaintiff that he needed to stop complaining about everyone in the unit and "do [his] own time." (Compl., ¶ 6, docket #1, Page ID#3.) Plaintiff informed West that he was not talking to him. West allegedly pointed his finger at Plaintiff and told him that he was tired of his "shit." (*Id.*) While

Plaintiff was objecting to West's language and tone, he saw Defendant Morefield pull out and aim his taser at Plaintiff. Plaintiff asked Morefield if he was going to fire his taser. He heard Defendant West tell Morefield to shoot Plaintiff with the taser. Without warning Plaintiff, Morefield activated the taser, shooting Plaintiff in the chest. After Plaintiff was on the ground, Morefield stood over Plaintiff and fired the taser again. Plaintiff was then placed in handcuffs and taken to segregation, where he remained until July 30, 2014.

Shortly thereafter, Defendant West issued Plaintiff a misconduct ticket for threatening behavior, alleging,

> At 1040 while talking with Prisoner Colvin #192744 (3-234-A) he became very angry and with his fists closed from approximately 2 feet away screamed at me, ["]Fuck you! You ain't shit, you ain't nobody to me. I'll fuck you up!" After prisoner stated this he was told to calm down. He continued to yell and with his fist closed and advanced towards me. Taser was deployed by Officer Morefield.

(*Id.*, ¶ 18, Page ID#4.) On July 29, 2014, Defendant Pallas found Plaintiff guilty of the threatening-behavior misconduct charge. Pallas indicated that he had reviewed both the taser usage report and the unit's video footage. The usage report, which was prepared by Morefield, stated that Plaintiff was warned to back away and calm down, but he did not do so. The report indicated that a second burst was filed when Plaintiff struggled to remove the probes. Pallas held that the video did not show that Plaintiff had made an abrupt, aggressive move toward West. Pallas therefore concluded that the allegation that Plaintiff had advanced toward West with the intent to strike him was unfounded. Pallas found, however, that Plaintiff was upset and had made a verbal threat against West. He therefore upheld the ticket for threatening behaviour.

Plaintiff complains that he never engaged in threatening behavior, and he contends that the ticket was issued in retaliation for his grievances and complaints. He alleges that, on July

15, 2014, only three days before the incident, he had filed a grievance about the failure to distribute the weekly bleach-water solution. He named Defendants Morefield and McDonald in the grievance. Plaintiff alleges that the issue was again raised in the Warden's Forum meeting of August 26, 2014.

While Plaintiff was in segregation, Defendant McDonald packed Plaintiff's personal and legal property. McDonald issued a Notice of Intent to Conduct an Administrative Hearing (NOI), which indicated that, during pack-up, Plaintiff's papers and books would not all fit in his three footlockers and duffel bag. McDonald therefore confiscated the excess materials, and the NOI informed Plaintiff that he must decide what property he wished to keep. McDonald, however, failed enter the property into the logbook, and the property was misplaced. The NOI hearing was never held because the property could not be found. Plaintiff contends that he did not have excess property. He asserts that he had an excess-property hearing in June 2014, at which time he demonstrated that his property fit into the footlockers and duffel bag. Plaintiff therefore contends that his property was unlawfully removed, and he asserts that McDonald took the action in retaliation for Plaintiff's complaints to Defendant Winger and others about the bleach water.

Plaintiff next complains that, when he was taken to segregation, he was placed in one of the 16 "dry cells," which are cells that "have no 'running' water, basins, toilets, or nonflushable portable waste containers." (*Id.*, ¶ 44, Page ID#9.) Plaintiff asserts that the occupants of the 16 dry cells may use only one toilet and shower, to which they must be escorted by two staff members. Plaintiff complains that understaffing and limited facilities led segregation prisoners to throw bodily waste from their room windows, resulting in a stench. Plaintiff alleges that on a number of occasions, especially during the night or early-morning hours, he waited hours to go to the restroom. On one occasion, he had to vomit out his window because there was no guard to escort him.

In addition, Plaintiff complains that, on June 27, 2014, Defendant Heyns issued a Director's Office Memorandum (DOM), reducing mandatory law library access from six to four hours per week, because the advent of an Electronic Law Library (ELL) allowed quicker research, necessitating fewer library hours. *See* MICH. DEP'T OF CORR., Director's Office Memorandum 2014-31. In DOM 2014-31, Heyns also issued notice that the MDOC would soon be removing "hard copy" publications and that all prisoners needed to become adept at using ELL. (Compl., ¶ 52, Page ID#11.) In addition, on October 25, 2014, KCF Law Library posted a memorandum informing prisoners that a new library callout system was being implemented. Under the new system, prisoners were required to specify on their library-callout requests how many hours of ELL access and how many hours of library study time they were requesting. When called out for one, prisoners would not be allowed to use the other. In addition, prisoners were informed that, even if they currently were receiving repeat callouts, they were required to submit new kites conforming with the policy. Both policies permitted additional library time when necessary under MICH. DEP'T OF CORR., Policy Directive 05.03.115 or when resources permitted. Plaintiff complains that the elimination of hard-copy resources will prevent segregation prisoners from obtaining legal materials. He also alleges that the MDOC provides insufficient ELL machines. Further, he complains that prisoners like himself have not been trained on ELL. Finally, he asserts that he is researching several cases, and four hours of library time each week is insufficient.

Next, Plaintiff complains that Defendant Pallas violated his rights by refusing to allow Plaintiff to view the videotape of the incident in which he was shot by the taser, on the grounds that the video would provide Plaintiff information about surveillance capability. Plaintiff argues that, under the MDOC hearing handbook, he should have been allowed to see the video. He

asserts that prisoners routinely are denied the opportunity to view videos and that the reasons offered by Pallas are merely pretextual.

In sum, Plaintiff raises six counts in his complaint: (1) Defendant Morefield used excessive force in violation of the Eighth Amendment and committed a state-law assault and battery when he twice discharged his taser into Plaintiff's chest, and Defendants West and Winger violated the Eighth Amendment by failing to protect Plaintiff from Morefield; (2) Defendants Morefield and McDonald retaliated against Plaintiff for filing grievances in violation of the First Amendment; (3) Defendant McDonald deprived Plaintiff of his property without due process in violation of the Fifth and Fourteenth Amendments; (4) Defendants Heyns, Burt and Jackson authorized or approved the inhumane conditions of confinement in the MCF segregation unit, depriving Plaintiff of his rights under the Eighth Amendment; (5) Defendant Heyns deprived Plaintiff of his right to access the law library and thereby deprived him of his right to access the courts; and (6) Defendant Pallas deprived Plaintiff of his right to due process when he refused to allow Plaintiff to view the videotape before finding him guilty of misconduct. Plaintiff seeks injunctive relief on Count 4 and 5, together with nominal, compensatory and punitive damages on all counts.

**Discussion**

I.   Immunity

Plaintiff alleges in Count 6 that Defendant Pallas, acting as a hearings officer, violated his right to due process under the Fourteenth Amendment by failing to allow him to view the videotape of the taser incident in order to prepare for and defend against his misconduct charge. Plaintiff seeks relief only in the form of damages.

The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity from damages in relation to actions within the officer's authority.  *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255.  *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same).  Plaintiff's action fails because Defendant Pallas, as a hearings officer, is absolutely immune from suit for damages under the circumstances of this case.

Moreover, even if Plaintiff had attempted to seek injunctive relief, it would not be available under § 1983.  Under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012).  Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable.  Consequently, any claim for injunctive relief is barred.  *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

For these reasons, Defendant Pallas will be dismissed from the action.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Retaliation

Petitioner alleges that Defendant West issued a false misconduct ticket against him, ostensibly in retaliation for Plaintiff's having filed grievances and making complaints to Winger about Defendants' failure to distribute bleach-water solution throughout the unit on Saturdays. Plaintiff also alleges that Defendant West instructed Defendant Morefield to fire his taser and Defendant Morefield did so in retaliation for Plaintiff's complaints. In addition, Plaintiff alleges that, for the same reason, Defendant McDonald retaliated against him by falsely issuing an NOI, confiscating Plaintiff's property, and ultimately misplacing the property so that Plaintiff could not challenge its confiscation.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claim against Defendant West for writing a misconduct ticket will be dismissed. A prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not

subject to challenge in a § 1983 action). Plaintiff was charged and, following a hearing, convicted of a major misconduct. He therefore may not relitigate the issue in this action.

The Court concludes that Plaintiff's remaining retaliation allegations are sufficient to state a claim.[1]

### B. Due Process

Plaintiff alleges that Defendant McDonald deprived him of his property without due process when he improperly confiscated Plaintiff's property and ultimately deprived Plaintiff of it.

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

---

[1] The Court notes that, while a major misconduct ticket bars a prisoner from contesting the misconduct underlying the ticket, it does not bar a claim of excessive force arising out of the same incident. *See Peterson*, 714 F.3d at 917. As discussed, *infra*, the Court will order the excessive-force claim served.

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due-process claim against Defendant McDonald will be dismissed.

### C.     Eighth Amendment – Excessive Force

Plaintiff alleges that Defendant Morefield used excessive force against him, in violation of the Eighth Amendment, when he twice fired his taser into Plaintiff's chest. Plaintiff contends that Defendant West, by instructing Morefield to fire his taser under these circumstances, also violated the Eighth Amendment. Further, Plaintiff alleges that Defendants Winger and West witnessed and failed to protect Plaintiff from Morefield's excessive use of force. The Court concludes that, at this juncture, the allegations are sufficient to warrant service of the excessive-force claim.

### D. Eighth Amendment – Conditions of Confinement

Plaintiff alleges that the conditions of confinement in the MCF segregation unit violated the Eighth Amendment, and that Defendants Heyns, Burt and Jackson are responsible for the violation. Plaintiff contends that, because of limited staffing and the lack of toilet access in segregation cells, segregation prisoners sometimes throw their human waste through their windows. He complains about both the lack of opportunities to use the toilets and the stench caused by the other prisoners' conduct. In addition, Plaintiff alleges that, during his two-week placement in segregation, he had to wait uncomfortably long to use the toilet and that, on one occasion, he vomited through his window because no guard was available to take him to the toilet.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

To the extent that Plaintiff complains about the deprivations suffered by other prisoners, he lacks standing to bring the claims. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978).

With respect to Plaintiff's complaint about the smells in the unit, he fails to allege facts meeting the objective prong of the deliberate-indifference standard. Although long-term unsanitary conditions violate the Eighth Amendment, *see Rhodes*, 452 U.S. at 348, Plaintiff does not allege that the smells he faced posed a substantial risk of serious harm as required by *Helling*, 509 U.S. at 35. In *Abdur-Reheem-X v. McGinnis*, No 99-1075, 1999 WL 1045069, at *3 (6th Cir. 1999), the Sixth Circuit rejected a prisoner's claim that his Eighth Amendment rights were violated when he was forced to smell the odor of feces from the nearby cell of a mentally ill prisoner. Similarly, in *Bey v. Luoma*, No. 2:06-cv-243, 2009 WL 884630, *3 (W.D. Mich. 2009), this Court rejected a prisoner's claim that the smell of human feces subjected him to a grave health risk, despite the fact that the prisoner alleged he experienced nausea and headaches.

Plaintiff does not claim that he experienced physical symptoms caused by the smells. In addition, Plaintiff does not allege that his own cell was contaminated or that prison officials fail to ensure any incidents are cleaned up. He merely alleges that individuals in the unit sometimes throw their feces and urine from their windows. Such allegations fall short of demonstrating an objectively serious risk to his health or safety caused by the smell of human waste in the segregation unit. *See Helling*, 509 U.S. at 35-36.

In addition, Plaintiff complains that he experienced discomfort on some occasions while waiting to use the toilet. Mere discomfort is insufficient to state an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 25 (1992). Similarly, the fact that correctional officers failed on one occasion to take Plaintiff to the toilet before he vomited falls short of an Eighth Amendment violation. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (holding that allegations about temporary inconveniences do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency); *Hartsfield v. Vidor,* 199 F.3d 305, 310 (6th Cir. 1999) (stating that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment").

For all these reasons, Plaintiff fails to allege an Eighth Amendment violation based on the conditions of his confinement. Since this is the only claim raised against Defendants Burt and Jackson, they will be dismissed for failure to state a claim.

### E.   Access to the Courts

Plaintiff contends that Defendant Heyns adopted an unconstitutional policy governing law library access. Specifically, he complains that, in 2014, Defendant Heyns imposed restrictions

on the number of library hours available to prisoners and limitations on the availability of hard-backed materials, without providing training in the use of the ELL system.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to

- 15 -

> challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

In the instant case, Plaintiff fails entirely to allege that he has suffered actual injury. He asserts only that he has a number of pending legal cases and that four hours per week are insufficient. Such allegations fall far short of the pleading standard describe in *Christopher*, 536 U.S. at 415-16. Instead, they are largely conclusory and theoretical, and Plaintiff has offered no specific facts supporting his claim. Indeed, as provided and Policy Directive 05.03.115, ¶ O, a prisoner who "has a court deadline requiring additional time in the law library may request additional time from the librarian or designee." Further, in DOM 2014-31, Defendant Heyns expressly declared that the policy directive would continue to be followed. These procedures

undermine any inference of actual injury from the fact that Plaintiff has multiple lawsuits pending.

Plaintiff's allegations concerning the changes in the policy governing law-library privileges therefore fail to support a claim that he was denied access to the courts. Because Plaintiff's only remaining claim against Defendant Heyns is his adoption and implementation of the law-library policy, the Court will dismiss Defendant Heyns from the action.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Heyns, Burt, Jackson and Pallas will be dismissed on grounds of immunity or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will dismiss Plaintiff's conditions-of confinement, due process, and access-to-the-courts claims. The Court will serve the remainder of the complaint against Defendants Morefield, McDonald, Winger and West.

An Order consistent with this Opinion will be entered.


Dated:   February 12, 2015              /s/ Janet T. Neff
                                        Janet T. Neff
                                        United States District Judge