UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH COLVIN, JR. #192744,

       Plaintiff,                                       Hon. Janet T. Neff

v.                                                           Case No. 1:15-cv-70

DANIEL HEYNS, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

       This matter is before the Court on Defendants' Motion for Summary Judgment, (ECF No. 49), and Plaintiff's Motion for Summary Judgment, (ECF No. 57). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part** and Plaintiff's motion be **denied**.

## BACKGROUND

       Plaintiff Kenneth Colvin is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correction Facility. The actions giving rise to this action occurred while Plaintiff was housed at the Kinross Correctional Facility (KCF) and the Muskegon Correctional Facility (MCF). Plaintiff sued MDOC Director Daniel H. Heyns and Administrative Law Judge Donald J. Pallas, as well as the following MCF officials: Warden S. L. Burt; Deputy Warden (unknown) Jackson; Correctional Officers (unknown) Morefield and (unknown) McDonald; Resident Unit Manager Jeanine Winger; and Prison Counselor Bryan West. Plaintiff alleges the following in his complaint.

On July 18, 2014 at about 10:40 a.m., Plaintiff left the Unit 3 game room and walked to the unit officer's desk. He asked Defendant Morefield to contact Ms. Crawford, who is not a defendant in this action. Defendant Morefield rubbed his head and angrily informed Plaintiff that he would contact Ms. Crawford and ask her to call Plaintiff out to see her. Defendants Winger and West also were standing at the desk. Plaintiff began to speak with Defendant Winger, advising her that bleach water solution was not being distributed every Saturday, as Winger had informed Plaintiff would happen on July 2, 2014. Plaintiff specifically requested that she directly instruct Defendant Morefield and Correctional Officer McDonald to distribute the bleach water the following day. Winger explained to Plaintiff that the bleach water solution is first used to clean the unit's shower and bathrooms. After those are clean, the water is distributed for unit cleaning. Defendant Bryan West overheard the conversation and told Plaintiff that he needed to stop complaining about everyone in the unit and "do [his] own time." Plaintiff informed West that he was not talking to him. West pointed his finger at Plaintiff and told him that he was tired of his "shit." While Plaintiff was objecting to West's language and tone, he saw Defendant Morefield pull out and aim his taser at him. Plaintiff asked Morefield if he was going to fire his taser. He heard Defendant West tell Morefield to shoot Plaintiff with the taser. Without warning Plaintiff, Morefield activated the taser, shooting Plaintiff in the chest. After Plaintiff was on the ground, Morefield stood over Plaintiff and fired the taser again. Plaintiff was then placed in handcuffs and taken to segregation, where he remained until July 30, 2014.

Shortly thereafter, Defendant West issued Plaintiff a misconduct ticket for threatening behavior, alleging:

> At 1040 while talking with Prisoner Colvin #192744 (3-234-A) he became very angry and with his fists closed from approximately 2 feet away screamed at me, ["]Fuck you! You ain't shit, you ain't nobody to me. I'll fuck you up!" After prisoner stated this he was told to calm

> down. He continued to yell and with his fist closed and advanced towards me. Taser was deployed by Officer Morefield.

On July 29, 2014, Defendant Pallas found Plaintiff guilty of the threatening behavior misconduct charge. Pallas indicated that he had reviewed both the taser usage report and the unit's video footage. The usage report, which was prepared by Morefield, stated that Plaintiff was warned to back away and calm down, but he did not do so. The report indicated that a second burst was filed when Plaintiff struggled to remove the probes. Pallas held that the video did not show that Plaintiff had made an abrupt, aggressive move toward West. Pallas therefore concluded that the allegation that Plaintiff had advanced toward West with the intent to strike him was unfounded. Pallas found, however, that Plaintiff was upset and had made a verbal threat against West. He therefore upheld the ticket for threatening behavior. Plaintiff complains that he never engaged in threatening behavior, and he contends that the ticket was issued in retaliation for his grievances and complaints. He alleges that, on July 15, 2014, only three days before the incident, he had filed a grievance about the failure to distribute the weekly bleach water solution. He named Defendants Morefield and McDonald in the grievance. Plaintiff alleges that the issue was again raised in the Warden's Forum meeting of August 26, 2014.

While Plaintiff was in segregation, Defendant McDonald packed Plaintiff's personal and legal property. McDonald issued a Notice of Intent to Conduct an Administrative Hearing (NOI), which indicated that, during pack-up, Plaintiff's papers and books would not all fit in his three footlockers and duffel bag. McDonald therefore confiscated the excess materials, and the NOI informed Plaintiff that he must decide what property he wished to keep. McDonald, however, failed to enter the property into the logbook, and the property was misplaced. The NOI hearing was never held because the property could not be found. Plaintiff contends that he did not have excess property. He asserts that he had an excess-property hearing in June 2014, at which time he demonstrated that his property fit into the

footlockers and duffel bag. Plaintiff therefore contends that his property was unlawfully removed, and he asserts that McDonald took the action in retaliation for Plaintiff's complaints to Defendant Winger and others about the bleach water.

Plaintiff next complains that, when he was taken to segregation, he was placed in one of the 16 "dry cells," which are cells that "have no 'running' water, basins, toilets, or nonflushable portable waste containers." Plaintiff asserts that the occupants of the 16 dry cells may use only one toilet and shower, to which they must be escorted by two staff members. Plaintiff complains that understaffing and limited facilities led segregation prisoners to throw bodily waste from their room windows, resulting in a stench. Plaintiff alleges that on a number of occasions, especially during the night or early-morning hours, he waited hours to go to the restroom. On one occasion, he had to vomit out his window because there was no guard to escort him.

Plaintiff complains that, on June 27, 2014, Defendant Heyns issued a Director's Office Memorandum (DOM), reducing mandatory law library access from six to four hours per week, because the advent of an Electronic Law Library (ELL) allowed quicker research, necessitating fewer library hours. In this memo, Heyns also issued notice that the MDOC would soon be removing "hard copy" publications and that all prisoners needed to become adept at using ELL. On October 25, 2014, KCF Law Library posted a memorandum informing prisoners that a new library callout system was being implemented. Under the new system, prisoners were required to specify on their library-callout requests how many hours of ELL access and how many hours of library study time they were requesting. When called out for one, prisoners would not be allowed to use the other. In addition, prisoners were informed that, even if they currently were receiving repeat callouts, they were required to submit new kites conforming with the policy. Both policies permitted additional library time when necessary or when

resources permitted. Plaintiff complains that the elimination of hard-copy resources will prevent segregation prisoners from obtaining legal materials. He also alleges that the MDOC provides insufficient ELL machines. Further, he complains that prisoners like himself have not been trained on ELL. Finally, he asserts that he is researching several cases, and four hours of library time each week is insufficient. Next, Plaintiff complains that Defendant Pallas violated his rights by refusing to allow Plaintiff to view the videotape of the incident in which he was shot by the taser, on the grounds that the video would provide Plaintiff information about surveillance capability. Plaintiff argues that he should have been allowed to see the video. He asserts that prisoners routinely are denied the opportunity to view such videos and that the reasons offered by Pallas in his misconduct decision were merely pretextual.

The Court previously dismissed Plaintiff's claims against Defendants Heyns, Burt, Jackson, and Pallas. (ECF No. 5). The Court also dismissed Plaintiff's conditions of confinement, due process, and access to the courts claims. Thus, the only claims remaining at this juncture are: (1) retaliation claims against Defendants West, Morefield, and McDonald; (2) Eighth Amendment excessive force claims against Defendants West and Morefield; (3) Eighth Amendment failure to protect claims against Defendants West and Winger; and (4) state law assault and battery claim against Defendant Morefield. Defendants West, Winger, Morefield, and McDonald now move for summary judgment. Plaintiff likewise moves for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party

"must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Retaliation**

As described above, Plaintiff alleges that Defendants West, Morefield, and McDonald subjected him to unlawful retaliation. Specifically, Plaintiff alleges that Defendant Morefield tased him at Defendant West's instruction. Plaintiff alleges both Defendants acted in retaliation for a grievance Plaintiff filed regarding the failure by prison officials to supply prisoners with bleach water. Plaintiff alleges that Defendant McDonald mishandled his property in retaliation for a grievance Plaintiff filed regarding the failure by prison officials to supply prisoners with bleach water.

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

With respect to causation, courts recognize that retaliation is easy to allege and "is often very difficult to prove with direct evidence." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted). Conclusory allegations of retaliatory motive are insufficient, however. *See Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004). Instead, Plaintiff must, at a minimum, allege a chronology of events from which retaliation can plausibly be inferred. *See Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998);

*Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004). On summary judgment, the causation element is analyzed under the burden-shifting framework articulated in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). *See Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007). Accordingly, even if Plaintiff demonstrates that his protected conduct "was a motivating factor in the defendant's action," Defendant is entitled to summary judgment if he demonstrates that he "would have taken the same action even without the protected activity." *Eby*, 481 F.3d at 441-42.

Defendants West, Morefield, and McDonald have each submitted affidavits in which they assert that when they undertook the conduct in question they had no knowledge that Plaintiff had filed any grievance regarding the failure by prison officials to supply prisoners with bleach water. (PageID.328-30, 332-34, 378-82). Defendants West, Morefield, and McDonald also each assert that they would have taken the same action even had they known of the grievance in question. (PageID.328-30, 332-34, 378-82). Plaintiff has failed to present any evidence contradicting or otherwise creating a dispute regarding these particular assertions. Accordingly, the undersigned recommends that with respect to Plaintiff's remaining claims of unlawful retaliation, Defendants' motion be granted and Plaintiff's motion be denied.

**II.        Eighth Amendment Use of Excessive Force Claims**

Plaintiff alleges that Defendant Morefield violated his right to be free from excessive force when he discharged a taser into his chest. Plaintiff alleges that Defendant West likewise violated his right to be free from excessive force by directing Defendant Morefield to tase Plaintiff.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S. Const. amend. VIII. The excessive use of force which results in the unnecessary and wanton infliction of pain violates this provision. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). Claims alleging the excessive use of force have both a subjective and an objective component. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). The objective component of the analysis examines whether the pain or deprivation allegedly suffered by the prisoner was "sufficiently serious" to implicate the Eighth Amendment. *Id.* To be "sufficiently serious," the prison official's act or omission must deny the prisoner of "the minimal civilized measure of life's necessities," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), as defined by contemporary standards of decency. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). Such standards "always are violated" when "prison officials maliciously and sadistically use force to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, "*de minimis* uses of physical force" do not violate the Eighth Amendment "provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10.

The subjective component of the analysis examines whether the prison official's conduct reflected "obduracy and wantonness" or was instead the product of "inadvertence or error in good faith." *Wilson*, 501 U.S. at 299. In this respect, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. 320-21. When evaluating whether a prison official's conduct falls short of this standard, the Court must consider the following factors: (1) the need for the application of force, (2) the relationship between such need and the force used, (3) the threat reasonably perceived by the prison official, and (4) any efforts undertaken to temper the severity of the response. *Hudson*, 503 U.S. at 7. The absence of injury, while relevant, is not dispositive. *Id.*

In support of their respective positions, the parties have submitted conflicting evidence which underscores that summary judgment on these claims is not appropriate. Defendants have submitted affidavits in which they assert Plaintiff was upset, argumentative, and verbally abusive. (PageID.328-30, 332-34, 378-82). Defendants further assert that Plaintiff then approached their location in "a threatening fashion" at which point Plaintiff was tased by Defendant Morefield. (PageID.328-30, 332-34, 378-82). Plaintiff, on the other hand, has submitted an affidavit in which he denies that he was argumentative, verbally abusive, or acted in a threatening manner. (PageID.406). Simply put, if a jury believes Defendants' version of events, the tasing of Plaintiff would appear to be a reasonable response to his conduct and, therefore, not contrary to the Eighth Amendment. On the other hand, if a jury believes Plaintiff's version of events, Defendants would not appear to have had any lawful justification for tasing Plaintiff. Thus, summary judgment is not warranted on Plaintiff's use of excessive force claims. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be denied as to Plaintiff's use of excessive force claims. Likewise, the undersigned recommends that Plaintiff's motion for summary judgment be denied as to such claims. Before proceeding, however, there are several additional arguments or issues raised by Defendants which must be addressed.

As noted above, the Eighth Amendment is generally not implicated by the de minimis use of force. Defendants appear to argue that they are entitled to relief on the ground that use of a taser constitutes just such a de minimis use of force. Defendants have identified no authority for the proposition that use of a taser falls within the category of force so minimal as to evade constitutional scrutiny. While the Court has not located any controlling Sixth Circuit authority directly addressing the question, the Court has located persuasive authority from the Seventh Circuit which observed that:

> As the Supreme Court has said, pain, not injury, is the barometer by which we measure claims of excessive force. . .and one need not have

>personally endured a taser jolt to know the pain that must accompany it.
>. . [t]hus, we hold. . .that the use of a taser gun against a prisoner is more than a *de minimis* application of force.

*Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) (citations omitted).

Defendants next appear to argue that much of Plaintiff's argument is foreclosed by res judicata. The Court disagrees. As noted above, following the July 18, 2014 incident at issue in this case, Plaintiff was charged by Defendant West with threatening behavior. Plaintiff was found guilty of this charge. (PageID.426-29). In reaching this conclusion, the hearing officer specifically found that Plaintiff "became upset with PC West and told him he would fuck him up. He thereby expressed an intent to physically harm PC West and I find the prisoner guilty of the charged offense." (PageID.429). Defendants assert that as a result of this finding, Plaintiff "cannot claim that he did not make threats to perpetrate bodily harm against staff in this case." (PageID.304). The implication of this argument is clear. If the hearing officer's factual findings are given preclusive effect, then the act of tasing Plaintiff would apparently be reasonable under the circumstances and, therefore, lawful under the Eighth Amendment. However, aside from a one-sentence conclusion, Defendants have utterly failed to develop this argument, instead simply assuming, apparently, that the hearing officer's factual findings are entitled to preclusive effect. An examination of relevant authority proves otherwise.

In *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013), the Sixth Circuit held that under certain circumstances a court must afford preclusive effect to the factual findings made in a prison disciplinary proceedings. *Id.* ay 911-18. However, such preclusive treatment is not merely accorded as a matter of course. In *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), the Sixth Circuit underscored this point:

>To the extent that Torres argues that, in light of *Peterson*, any factual findings by a hearing officer in a major-misconduct hearing in a

> Michigan prison are to be accorded preclusive effect, we reject such a reading of *Peterson* as overbroad. *Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing. Although the language of our opinion in *Peterson* is at times categorical, our decision to accord preclusive effect to particular findings from Peterson's prison hearing necessarily turned, at least in part, on the particular circumstances of Peterson's case. Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so - not just in theory, but in practice. It likewise turns on the court's "sense of justice and equity," which may require a case-by-case analysis of surrounding circumstances.

*Id.* at 404-05.

Defendants have completely failed to address the factors relevant to determining whether preclusive effect should be accorded the hearing officer's factual findings in this matter, but instead seem to assume, incorrectly, that such is simply mandated. Accordingly, the Court finds that the hearing officer's factual findings enjoy no preclusive effect in this matter.

Defendants also appear to place great significance in a brief video recorded by the taser device used to subdue Plaintiff. (PageID.348). There is nothing in this video supporting Defendants' position that the decision to tase Plaintiff was justified or reasonable. The video begins with Plaintiff standing still before being tased at which point he immediately falls to the ground. There is no indication that Plaintiff was refusing commands or otherwise failing to cooperate. Nevertheless, Plaintiff appears to be tased a second time after which he is secured without incident. Accordingly, the Court rejects any argument by Defendants that this video entitles them to summary judgment.

Finally, Defendants assert that they are entitled to relief on the grounds of qualified immunity. Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

As the Sixth Circuit has held, well before the incident giving rise to this action, "the right to be free from physical force when one is not resisting the police is a clearly established right." *Cockrell v. City of Cincinnati*, 468 Fed. Appx. 491, 496 (6th Cir., Feb. 23, 2012) (noting that qualified immunity is not appropriate where non-resisting individual is tased); *see also*, *Austin v. Redford Twp. Police Dep't.*, 690 F.3d 490, 496 (6th Cir. 2012) ("the law is clear in this Circuit that the use of force, including a Taser, on a suspect who has been subdued is unreasonable and a violation of a clearly established right"); *Correa v. Simone*, 528 Fed. Appx. 531, 535 (6th Cir., June 12, 2013) ("the right to be free from a taser shock is clearly established where they have done nothing to resist arrest or are already detained").

In sum, it was clearly established, well before the incident giving rise to this action, that tasing an individual without justification violated the law. Defendants are correct that qualified immunity might very well be appropriate if their version of events is believed. However, as the Sixth Circuit has stated, "[w]hen the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury, the jury becomes the final arbiter of a claim of immunity." *Bouggess v. Mattingly*, 482 F.3d 886, 896 (6th Cir. 2007). Accordingly, the undersigned recommends that Defendants' claim of qualified immunity as to Plaintiff's use of excessive force claims be denied.

### III. Eighth Amendment Failure to Protect Claims

Plaintiff alleges that Defendants West and Winger violated his Eighth Amendment rights by failing to protect him from Defendant Morefield's use of excessive force.

To prevail on this claim, Plaintiff must establish that Defendants were deliberately indifferent to "a substantial risk" that he might suffer "serious harm." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). To establish that Defendants acted with deliberate indifference, Plaintiff must demonstrate that Defendants were "subjectively aware of the risk," but failed "to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847).

A prison guard can be liable for failure to protect an inmate from the use of excessive force by another prison official. *See, e.g., Woodcock v. City of Bowling Green*, - - - F.3d - - -, 2016 WL 742922 at *18 (W.D. Ky., Feb. 23, 2016). To prevail on such a claim, it must be demonstrated that (1) the guard observed or had reason to know that excessive force would be or was being used and (2) the guard had both the opportunity and means to prevent the harm from occurring. *Id.* To satisfy this latter requirement, it must be shown that there existed "a realistic opportunity to intervene to prevent the harm from occurring." *Id.*

Plaintiff's claim fails because he has failed to present any evidence establishing (or reasonably permitting the inference) that Defendants West or Winger had any realistic opportunity to prevent Defendant Morefield from tasing Plaintiff. Accordingly, the undersigned recommends that as to Plaintiff's failure to protect claims, Plaintiff's motion for summary judgment be denied and Defendants's motion be granted.

### IV.        State Law Claims

Plaintiff alleges that Defendant Morefield committed state law assault and battery when he discharged a taser into his chest. Plaintiff also alleges that Defendant West likewise committed

assault and battery by directing Defendant Morefield to tase Plaintiff. Defendants have not moved for summary judgment as to these claims and, therefore, are not entitled to relief therefrom. Plaintiff has moved for summary judgment as to these claims, but as discussed in the context of his excessive force claims, there exist genuine factual disputes precluding relief for Plaintiff (or Defendants) on these claims. Accordingly, the undersigned recommends that as to Plaintiff's assault and battery claims, Defendants' motion be denied and Plaintiff's motion be denied.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (ECF No. 49), be **granted in part and denied in part** and Plaintiff's Motion for Summary Judgment, (ECF No. 57), be **denied**. Specifically, the undersigned recommends that with respect to Plaintiff's remaining retaliation and failure to protect claims, Plaintiff's motion be denied and Defendants' motion granted. As to Plaintiff's excessive force and assault and battery claims, the undersigned recommends that Plaintiff's motion be denied and Defendants' motion be denied.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: July 26, 2016                             /s/ Ellen S. Carmody
                                                ELLEN S. CARMODY
                                                United States Magistrate Judge