UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KENNETH COLVIN, JR. #192744,

    Plaintiff,                                        Hon. Ellen S. Carmody

v.                                                 Case No. 1:15-cv-70

DANIEL HEYNS, et al.,

    Defendants.
_____/

## OPINION

This matter is before the Court on Plaintiff's Motion for Summary Judgment, (ECF No. 151), and Defendants' Motion for Summary Judgment, (ECF No. 152). Plaintiff initiated the present action against numerous prison officials alleging numerous violations of his state and federal rights. At this juncture, the only claims remaining are Eighth Amendment excessive force and state law assault and battery claims against Defendants West and Morefield arising from an incident in which Plaintiff was subdued by use of a taser. Defendants and Plaintiff now move for summary judgment. For the reasons articulated herein, both motions are **denied**.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's

case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden,

"his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I. Background

With respect to his remaining claims, Plaintiff alleges the following. On July 18, 2014, Plaintiff approached the unit officer's desk where Defendants West, Morefield, and Winger were located. Plaintiff requested to speak with Ms. Crawford concerning Plaintiff's belief that bleach water cleaning solution was not being properly distributed. Defendant Morefield indicated that he would request that Ms. Crawford speak with Plaintiff. Plaintiff then began speaking with Defendant Winger about the matter and requested that the bleach water be distributed the following day.

Defendant West interjected and instructed Plaintiff to stop complaining and "do [his] own time." Plaintiff responded by informing West that he was not talking to him. Defendant West then pointed his finger at Plaintiff and told him that he was tired of his "shit." Plaintiff objected to West's language and tone. As Plaintiff and Defendant West were speaking, Defendant Morefield removed his taser and aimed it at Plaintiff. Defendant West told Morefield to shoot Plaintiff with the taser. Defendant Morefield then activated his taser, shooting Plaintiff in the chest. After Plaintiff fell to the ground, Morefield fired the taser a second time. Plaintiff was then placed in handcuffs and

taken to segregation.

## II.     Preclusive Effect of Prison Misconduct Hearing

Shortly thereafter, Defendant West charged Plaintiff with engaging in threatening behavior. Specifically, West alleged that during the aforementioned encounter, Plaintiff became very angry and stated to West, "Fuck you! You ain't shit, you ain't nobody to me. I'll fuck you up!" According to West, Plaintiff disregarded instructions to calm down only after which did Defendant Morefield subdue Plaintiff with his taser. Following a misconduct hearing, Plaintiff was found guilty of engaging in threatening behavior.

Defendants argue that "the hearing officer's factual determinations made in finding [Plaintiff] guilty of the threatening behavior misconduct are entitled to preclusive effect in this litigation." Plaintiff counters that the hearing officer's factual findings are not entitled to preclusive effect in this matter because Plaintiff was not afforded a full and fair opportunity to litigate the matter. Plaintiff further argues that Defendants are precluded from asserting this particular argument at this juncture of the proceedings. The Court finds Plaintiff's arguments unavailing.

Taking the latter argument first, Defendants, in a previous motion for summary judgment, asserted that Plaintiff was precluded from re-litigating in this forum the facts as determined by the hearing officer who conducted Plaintiff's threatening behavior misconduct hearing. (ECF No. 87 at PageID.540-41). The Court rejected Defendants' argument on the ground that Defendants had failed to establish the factors necessary to obtain preclusive effect of the hearing officer's factual findings. (ECF No. 87 at PageID.541).

Citing to *Jennings v. Crompton*, 2018 WL 271913 (W.D. Mich., Jan. 3, 2018), Plaintiff argues that Defendants' present argument in favor of affording preclusive effect to the Hearing

Officer's factual findings should be characterized as a motion for reconsideration of the Court's previous decision on this issue and, as such, should be rejected. In *Jennings*, a magistrate judge recommended the dismissal of two defendants. *Jennings v. Crompton*, 1:16-cv-921, ECF No. 76 (W.D. Mich.). The plaintiff did not object to this recommendation and, accordingly, the two defendants in question were dismissed. *Jennings*, 1:16-cv-921, ECF No. 85. More than four months later, the plaintiff filed a motion for summary judgment in which he objected to the previous dismissal of the aforementioned defendants. *Jennings*, 1:16-cv-921, ECF No. 96. The court treated this "objection" as a motion to reconsider the previous dismissal of the defendants in question. *Jennings*, 1:16-cv-921, ECF No. 98.

The present circumstance is distinguishable. Here, Defendants are not requesting that the Court revisit a matter that was previously resolved to finality, resulting in the dismissal of any claims or parties. Instead, Defendants have merely reasserted in their present motion an argument which they unsuccessfully asserted in a previous motion for summary judgment. It is not uncommon for parties to assert certain arguments more than once during the course of litigation. So long as such attempts do not contravene controlling legal authority or previous decisions or orders in the case, the Court discerns nothing improper or unfair about Defendants reassertion of this particular argument. The Court also notes that subsequent to the initial assertion by Defendants of this preclusion argument, counsel was appointed for Plaintiff, discovery re-opened, and another round of dispositive motions permitted. In sum, Plaintiff has identified no authority or previous decision or order in this case which precludes Defendants from re-asserting this particular argument in a properly filed motion for summary judgment. Accordingly, this argument is rejected.

As for whether the hearing officer's factual findings are entitled to preclusive effect,

this is a question which the Sixth Circuit has recently addressed. In *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013), the Sixth Circuit held that under certain circumstances a court must afford preclusive effect to the factual findings made in a prison disciplinary proceedings. *Id.* ay 911-18. However, such preclusive treatment is not merely accorded as a matter of course. In *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), the Sixth Circuit underscored this point:

> To the extent that Torres argues that, in light of *Peterson*, any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect, we reject such a reading of *Peterson* as overbroad. *Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing. Although the language of our opinion in *Peterson* is at times categorical, our decision to accord preclusive effect to particular findings from Peterson's prison hearing necessarily turned, at least in part, on the particular circumstances of Peterson's case.

*Id.* at 404.

As the *Torres* court indicated, to obtain preclusive effect of the factual findings made by a state agency, the following factors must be satisfied: (1) the state agency was acting in a judicial capacity; (2) the hearing officer resolved a disputed issue of fact that was properly before him; and (3) the party to be precluded from re-litigating the fact(s) in question was afforded an adequate opportunity to litigate the factual dispute. *Id.* at 403-04. If these three factors are satisfied, the Court must afford to the hearing officer's factual findings the same preclusive effect such would be given in state court. *Id.* at 404. An examination of these factors all weigh in favor of according preclusive effect to the hearing officer's factual findings.

The first prong is satisfied if the hearing officer "considers evidence from both parties, allows both parties to argue their versions of the facts at a formal hearing, and issues a written final decision that is subject to direct review in state court." *Id.* at 403. As these requirements were satisfied here, the Court finds that the hearing officer was acting in a judicial capacity.

Regarding the second factor, the factual disputes which were properly before the hearing officer are limited to those which, according to Defendant West, justified charging Plaintiff with threatening behavior. In his Misconduct Report charging Plaintiff with threatening behavior, Defendant West described Plaintiff's improper conduct as follows:

> At 1040 while talking with Prisoner Colvin #192744 (3-234A) he became very angry and with his fists closed from approximately 2 feet away screamed at me, "Fuck you! You ain't shit, you ain't nobody to me. I'll fuck you up!" After prisoner stated this he was told to calm down. He continued to yell and with his fist closed and advanced towards me. Taser was deployed by Officer Morefield.

(ECF No. 159-1 at PageID.1321).

Defendants argue that preclusive effect should also be accorded to the hearing officer's conclusion that Plaintiff engaged in threatening behavior and that such constitutes sufficient legal justification for subduing Plaintiff with a taser. This argument is unpersuasive for at least two reasons.

As the Sixth Circuit has made clear, preclusion in this context "includes only *factual* issues decided by a state agency." *Peterson*, 714 F.3d at 917-18. The hearing officer's determination that Plaintiff engaged in threatening behavior is a legal conclusion to which no preclusive effect is accorded. Furthermore, to the extent that Defendants argue that the hearing officer determined that Defendant Morefield's use of the taser was appropriate or otherwise justified, such is refuted by the hearing officer himself, who stated in his report that, "[t]he function and intent of this hearing is not [to] pass judgment on whether there was a proper or improper use of a taser in this incident." (ECF No. 159-2 at PageID.1323).

The third factor concerns whether Plaintiff was afforded an adequate opportunity to litigate the factual dispute(s) in question. Plaintiff does not dispute that he was present at the

7

misconduct hearing, nor does he argue that he was unable to participate to the extent allowed by Michigan law or MDOC policy. Instead, Plaintiff argues that this factor is not satisfied because: (1) the hearing officer did not present to a witness certain written questions Plaintiff submitted and (2) the hearing officer spoke to one witness on the telephone outside Plaintiff's presence. However, Plaintiff's argument completely overlooks that he could have asserted these arguments on appeal of the hearing officer's decision. Plaintiff chose not to appeal the hearing officer's decision in state court as he was permitted to do, but instead seeks to litigate such matters for the first time in this forum. Plaintiff has identified no authority supporting such a proposition. As the Sixth Circuit has recognized, where a prisoner has an opportunity to appeal a hearing officer's findings and decision, such satisfies the "adequate opportunity to litigate" prong. *Peterson*, 714 F.3d at 913; *Torres*, 770 F.3d at 403-04.

In sum, the Court finds that Defendants have established the first three factors identified above. Thus, the Court must afford to the hearing officer's factual findings the same preclusive effect such would be given in state court. This analysis is similar to the analysis immediately above. Whether the hearing officer's factual findings are entitled to preclusive effect depends on three factors: (1) a question of fact *essential to the judgment* was actually litigated and decided; (2) the parties had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel. *Peterson*, 714 F.3d at 914 (emphasis added). The first two factors are satisfied for the reasons discussed above and the third factor is satisfied because the parties to the misconduct hearing and the present matter are identical. Accordingly, any facts found by the hearing officer, which were essential to his judgment, are entitled to preclusive effect.

The essential factual finding made by the hearing officer is that Plaintiff "became upset with [Defendant] West and told him he would fuck him up." (ECF No. 159-2 at PageID.1323-25). While the hearing officer's report contains other factual findings, none were *essential* to his finding that Plaintiff was guilty of the charged misconduct. As previously noted, Defendant West charged Plaintiff with threatening behavior based on the allegation that Plaintiff verbally threatened him and then subsequently "advanced towards" him. The hearing officer specifically found that Plaintiff verbally threatened West and that such was sufficient to convict Plaintiff of threatening behavior. Thus, none of the hearing officer's other factual findings were *essential* to his determination that Plaintiff was guilty of the charged misconduct. Accordingly, the factual finding that Plaintiff "became upset with [Defendant] West and told him he would fuck him up" is entitled to preclusive effect and cannot be re-litigated by the parties.

### III. Eighth Amendment Use of Excessive Force Claims

Plaintiff alleges that the decision to subdue him by use of a taser constituted excessive force in violation of his Eighth Amendment rights. Plaintiff and Defendants both assert entitlement to summary judgment as to such claims. Genuine disputes of fact regarding the events preceding the deployment of the taser against Plaintiff, however, preclude granting summary judgment to any party.The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S. Const. amend. VIII. The excessive use of force which results in the unnecessary and wanton infliction of pain violates this provision. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). Claims alleging the excessive use of force have both a subjective and an objective component. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

The objective component examines whether the pain or deprivation allegedly suffered by the prisoner was "sufficiently serious" to implicate the Eighth Amendment. *Id.* To be "sufficiently serious," the prison official's act or omission must deny the prisoner of "the minimal civilized measure of life's necessities," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), as defined by contemporary standards of decency. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). Such standards "always are violated" when "prison officials maliciously and sadistically use force to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, "*de minimis* uses of physical force" do not violate the Eighth Amendment "provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10. The use of a taser can satisfy the objective prong of an Eighth Amendment claim. *See, e.g., Lewis v. Dorsey*, 581 F.3d 467, 475 (7th Cir. 2009) ("[a]s the Supreme Court has said, pain, not injury, is the barometer by which we measure claims of excessive force. . .and one need not have personally endured a taser jolt to know the pain that must accompany it. . .[t]hus, we hold. . .that the use of a taser gun against a prisoner is more than a *de minimis* application of force") (internal citations omitted).

The subjective component examines whether the prison official's conduct reflected "obduracy and wantonness" or was instead the product of "inadvertence or error in good faith." *Wilson*, 501 U.S. at 299. In this respect, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. 320-21. When evaluating whether a prison official's conduct falls short of this standard, the Court must consider the following factors: (1) the need for the application of force, (2) the relationship between such need and the force used, (3) the threat reasonably perceived

by the prison official, and (4) any efforts undertaken to temper the severity of the response. *Hudson*, 503 U.S. at 7. The absence of injury, while relevant, is not dispositive. *Id.*

    A.    Video Evidence

The video evidence submitted by the parties consists of (1) video, apparently recorded by a body camera worn by Defendant Morefield, concerning the incident in question and (2) video concerning the incident in question recorded by hallway cameras a significant distance from the location where the events in question occurred. Regarding the body camera video, as the Court has previously concluded:

> There is nothing in this video supporting Defendants' position that the decision to tase Plaintiff was justified or reasonable. The video begins with Plaintiff standing still before being tased at which point he immediately falls to the ground. There is no indication that Plaintiff was refusing commands or otherwise failing to cooperate. Nevertheless, Plaintiff appears to be tased a second time after which he is secured without incident.

(ECF No. 87 at PageID.541).

The video footage recorded from the hallway cameras reveals little about the incident in question. The events leading up to the deployment of the taser cannot be discerned from this footage. Plaintiff cannot even be seen in the video footage until after the taser has been deployed and he is laying on the ground. The relevance of this video is questionable, although it certainly does appear to refute Defendants' assertion that the setting in which the events in question occurred were "crowded and chaotic." In sum, the video footage fails to advance any party's cause.

As for Plaintiff's argument that this video evidence is inconsistent with Defendants' version of the relevant events, the Court is not persuaded that such justifies summary judgment. Even if the Court assumes that the video evidence is inconsistent with certain statements or assertions made by Defendants and/or their witnesses, such goes to the credibility of the witnesses in question which

is a matter for the jury to resolve. To obtain summary judgment, Plaintiff cannot simply demonstrate that Defendants are unworthy of belief, but must instead demonstrate that the evidence before the Court is such that no reasonable trier of fact could find other than for Plaintiff.

As previously noted, the video evidence simply does not capture the events preceding the deployment of the taser on Plaintiff. Moreover, as discussed below, with respect to these unrecorded pre-taser events, there exists significant factual disputes which preclude summary judgment. This would be a much different matter if the video evidence recorded every relevant aspect of the incident in question. In such a case, perhaps there would be an argument to be made that the objective video evidence take precedence over contradictory testimonial evidence thereby warranting summary judgment. Such is not the case, however, in this matter.

B. Events Preceding the Video Evidence

As the parties note in their various pleadings, there exists an irreconcilable dispute of fact concerning the events preceding the deployment of the taser against Plaintiff. For example, in his depositions, Plaintiff testified that when he was standing at the unit officer's desk discussing his concerns about the distribution of the bleach water, Defendants Morefield and West became angry with him and West subsequently instructed Morefield to deploy his taser against Plaintiff. (ECF No. 151-2 at PageID.817-18; ECF No. 151-3 at PageID.857-72). Plaintiff denies taking any action which could reasonably be perceived as threatening any of the individuals with whom he was interacting. (ECF No. 151-2 at PageID.817-18; ECF No. 151-3 at PageID.857-72).[1]

---

[1] The Court notes that the Hearing Officer was not persuaded by the allegation that Plaintiff "advanced towards" Defendant West during the incident in question. Specifically, the Hearing Officer found that "the evidence does not support the proposition that [Plaintiff] advanced on [Defendant] West with the intent to strike of physically abuse him." (ECF No. 159-2 at PageID.1324). The Court recognizes that this particular finding is not entitled to preclusive effect because it was not essential to the Hearing Officer's ultimate finding. Nevertheless, this constitutes evidence which runs counter to Defendants' version of events.

On the other hand, Defendants and their witnesses paint a very different picture of the relevant events. Jeanine Winger testified that Plaintiff verbally threated, and then "moved toward" Defendant West. (ECF No. 151-6 at PageID.929-31). According to Winger, Plaintiff refused attempts to "de-escalate the situation," including a direct order to exit the area, and instead Plaintiff "continued to engage," only after which Defendant Morefield deployed his taser. (ECF No. 151-6 at PageID.929-31). Defendant Morefield testified that Plaintiff was agitated and "starting to get out of hand." (ECF No. 151-14 at PageID.981). According to Morefield, Plaintiff was "yelling," threatening Defendant West, and refusing attempts to "defuse the situation," which prompted Morefield to deploy his taser. (ECF No. 151-14 at PageID.981-88). Defendant West testified that Plaintiff verbally threatened him and then continued to escalate the situation, including again threatening him, at which point Defendant Morefield deployed his taser. (ECF No. 151-17 at PageID.1039). Albert McDonald testified that Plaintiff "got very angry" at Defendant West, after which Plaintiff "made a threat towards West," prompting Defendant Morefield to instruct Plaintiff "to calm down." (ECF No. 151-18 at PageID.1068). According to McDonald, Plaintiff responded by continuing to act in an agitated manner and even stated "something to the effect of, what are you going to do," at which point Morefield deployed his taser. (ECF No. 151-18 at PageID.1068).

In sum, if a jury believes the version of events presented by Defendants and their witnesses, the tasing of Plaintiff could reasonably be found to be an appropriate response to Plaintiff's conduct and, therefore, not a violation of Plaintiff's Eighth Amendment rights. On the other hand, if a jury believes Plaintiff's version of events, it would not be unreasonable to conclude that Defendants had no lawful justification for tasing Plaintiff and, therefore, violated Plaintiff's Eighth Amendment rights. Moreover, this conclusion is not altered by the fact that the Court must take as settled fact that

Plaintiff "became upset with [Defendant] West and told him he would fuck him up." While this fact supports Defendants' position, such is not, by itself, sufficient to defeat Plaintiff's Eighth Amendment claims.

As noted above, the subjective component of an Eighth Amendment claim considers whether force "was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." When making this evaluation, the Court considers the following factors: (1) the need for the application of force, (2) the relationship between such need and the force used, (3) the threat reasonably perceived by the prison official, and (4) any efforts undertaken to temper the severity of the response. Simply stated, the facts and circumstances surrounding the making of Plaintiff's statement to Defendant West must be considered and, as previously discussed, those facts and circumstances were not captured on video and are instead disputed by the parties.

Defendant Morefield even conceded during his deposition that merely making a verbal threat is not necessarily a sufficient basis for using a taser on an inmate, but that instead the totality of the circumstances must be considered. The exchange in question was as follows:

> Q: I'm going to pose a hypothetical. If any inmate makes that same threat that you heard to a staff member, but then stops being threatening and doesn't follow through on that threat, is it okay to tase the inmate a week later?
>
> A: No.
>
> Q: In that same scenario would it be okay to tase the inmate an hour later?
>
> A: No, I would not think so.
>
> Q: And the reason is because you don't tase somebody to punish them or retaliate, correct? It's preventative, right?

14

A: Exactly.

Q: So taken to its logical conclusion then, if an inmate has made a threat but then doesn't carry out that threat and complied with an order to calm down, even if it's five seconds later, it's inappropriate to tase them at that point, correct?

A: I will go with correct.

Q: And you agreed with me that when we all watched Exhibit 5, which is the taser video, that we hear the words calm down, and in the intervening four or five seconds, or however long it is, he doesn't yell, he doesn't make any verbal threats, he doesn't make any sudden physical movements, and then he's tased, correct?

A: Four or five seconds?

Q: I don't have the exact –

A: I'm pretty sure it was quicker than that.[2]

Q: But you would agree with me that in the seconds between when he was told to calm down and when he was tased that he didn't take any – that he didn't make any verbal threats or take any physical action that would be perceived as threats in those few seconds?

A: He turned at me and said something.[3]

Q: He was looking at you, right?

A: He said something. I don't know what he said. That's not calming down when he turns at me and says something.

Q: What would you have expected him to do to calm down?

---

[2] According to the body camera video, four seconds pass from the time Plaintiff is told to "calm down" and when the taser is deployed. This is consistent with the Hearing Officer's observation. (ECF No. 159-2 at PageID.1324).

[3] This assertion is not substantiated by the video evidence.

15

> A: Leave. Physically leave the area. Physically just go back and go back into the TV room, card room, or his cell. Leave the area.
>
> Q: That would have been the appropriate response to the calm down instruction?
>
> A: Yes, sir.
>
> Q: So I just want to understand. If you give the instruction to calm down and he stops dead in his tracks and doesn't move and doesn't say anything, that's not the appropriate response? You're saying that he should leave?
>
> A: Yes.

(ECF No. 159-6 at PageID.1358).

Also relevant to any assessment of the circumstances surrounding this incident is a determination of the amount of time which elapsed between Plaintiff stating to Defendant West that he would "fuck him up" and the decision by Defendant Morefield to subdue Plaintiff with a taser. With respect to this issue, the record before the Court contains no definitive answer. Thus, summary judgment is not appropriate for any party as to Plaintiff's Eighth Amendment claims.

The Court also rejects Defendant West's additional argument that he is entitled to summary judgment on the ground that "the hearing officer determined that West did not tell Morefield to 'shoot' [Plaintiff], and [Plaintiff] is collaterally estopped from asserting otherwise." First, the hearing officer did not make a factual finding that Defendant West did not instruct Morefield to tase Plaintiff. Instead, the hearing officer merely observed that evidence of such a statement was not contained on the video evidence. (ECF No. 159-2 at PageID.1323-25). Moreover, even had the hearing officer made such a finding, such would not be afforded preclusive effect because, as previously discussed, such was not *essential* to the hearing officer's ruling. Accordingly, as to

Plaintiff's Eighth Amendment claims, Defendants' motion is denied and Plaintiff's motion is denied.

IV.     **State Law Claims**

Defendants assert that they are entitled to immunity as to Plaintiff's state law assault and battery claims. As Defendants correctly observe, they are entitled to immunity if: (1) they were acting within the scope of their authority; (2) their actions were discretionary in nature; and (3) they acted in good faith. *See, e.g., Miller v. Sanilac County*, 606 F.3d 240, 254 (6th Cir. 2010) (applying Michigan law). As discussed immediately above, there exist genuine factual disputes on the question whether Defendants acted in good faith. Accordingly, this argument is rejected.

V.      **Qualified Immunity**

Finally, Defendants again assert that they are entitled to qualified immunity. Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

As the Court previously concluded, it was clearly established, well before the incident giving rise to this action, that tasing an individual without justification violated the law. Defendants are correct that qualified immunity might very well be appropriate if their version of events is believed. However, as the Sixth Circuit has stated, "[w]hen the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury, the jury becomes the final arbiter of a claim of immunity." *Bouggess v. Mattingly*, 482 F.3d 886, 896 (6th Cir. 2007). Accordingly, Defendants' claim of qualified immunity is rejected.

## **CONCLUSION**

For the reasons articulated herein, Plaintiff's Motion for Summary Judgment, (ECF No. 151), and Defendants' Motion for Summary Judgment, (ECF No. 152), are both **denied**. An Order consistent with this Opinion will enter.


Dated: February 26, 2018 　　　　　　　　　　　　　　/s/ Ellen S. Carmody
　　　　　　　　　　　　　　　　　　　　　　　　　　ELLEN S. CARMODY
　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge